PEISNER v THE DETROIT FREE PRESS, INC

Docket No. 78-4776. Submitted April 21, 1980, at Detroit.—Decided March 3, 1981. Leave to appeal applied for.

Balfour Peisner and Nora S. Peisner brought an action against The Detroit Free Press, Inc. and Louis Heldman, a Free Press reporter, arising out of a libelous statement published by the Free Press. Defendants counterclaimed, alleging abuse of process. Plaintiffs moved to dismiss the counterclaim, which motion was denied, Wayne Circuit Court. Plaintiffs appealed the denial by leave granted, and the Court of Appeals reversed the circuit court's denial, 68 Mich App 360 (1977). Defendants subsequently moved for summary judgment on the grounds that the matters reported were true and that their publication was privileged, which motion was granted, Wayne Circuit Court. Plaintiffs appealed. The Court of Appeals reversed and remanded the case for trial, 82 Mich App 153 (1978). Following

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur 2d, Libel and Slander §§ 301, 302.

Libel and slander: what constitutes actual malice, within federal constitutional rule requiring public officials and public figures to show actual malice. 20 ALR3d 988.

Libel and slander: who is a public official or otherwise within the federal constitutional rule requiring public official to show actual malice. 19 ALR3d 1361.

Constitutional aspects of libel and slander—Supreme Court cases. 28 L Ed 2d 885.

[2] 50 Am Jur 2d, Libel and Slander §§ 452, 455, 457, 458.

[3] 5 Am Jur 2d, Appeal and Error §§ 548, 553.

[4] 50 Am Jur 2d, Libel and Slander §§ 238-240.

Relevancy of matter contained in pleadings as affecting privilege within law of libel. 38 ALR3d 272.

[5] 50 Am Jur 2d, Libel and Slander §§ 356, 360, 367, 550, 551.

Validity, construction, and application of statute limiting damages recoverable for defamation. 13 ALR2d 277.

[5-7] 50 Am Jur 2d, Libel and Slander § 375.

Libel and slander: who is protected by statute restricting recovery unless retraction is demanded. 84 ALR3d 1249.

[7] 50 Am Jur 2d, Libel and Slander §§ 190, 191.

[8, 10] 22 Am Jur 2d, Damages § 237.

[9] 50 Am Jur 2d, Libel and Slander § 358.

trial, a jury returned a verdict for plaintiffs, awarding actual and "additional" damages, Wayne Circuit Court, Harold Hood, J. Defendants appeal, alleging that the trial court erred in instructing the jury on the issue of malice, in allowing the jury to consider a letter containing the plaintiffs' demand for retraction, in allowing the jury to consider an editorial published by defendant Free Press, in allowing statements made in defendants' pleadings to be considered as evidence of malice, and in instructing the jury on the issue of damages, and that the damages awarded were excessive and not supported by the evidence. *Held:*

1. The trial court properly instructed the jury that actual malice would be shown by proof that defendants wrote or published the article in question with knowledge that it was false or with reckless disregard for whether it was false or not.

2. The trial court properly allowed the jury to consider plaintiffs' retraction demand and defendants' editorial as evidence tending to show the existence of malice at the time of the original publication.

3. Any error occasioned by the trial court's failure to instruct the jury that the editorial was not actionable and in reading plaintiffs' theory of the case was not preserved for appeal, no objection having been raised during trial and no manifest injustice having been shown.

4. The trial court erred in allowing the plaintiffs' counsel to argue regarding statements made in defendants' pleadings, but the error was harmless in light of other evidence presented prior to the argument.

5. The combined effect of the trial court's instructions on actual and exemplary damages resulted in error. Compensation for the types of injury normally associated with exemplary damages was authorized by the instruction on actual damages.

6. The award of damages was excessive but does not constitute grounds for reversal.

V. J. BRENNAN, P.J., concurred. He would note that since Michigan does not permit punitive damages the term should be eliminated from legal parlance, especially in jury instructions where its use can lead to confusion and invite appellate review.

BRONSON, J., concurs in the result only.

Affirmed as to liability, reversed and remanded as to damages.

Opinion of the Court

1. LIBEL AND SLANDER — MALICE.

Actual malice in a libel case is shown where the writing or publication is with knowledge that it is false or with a reckless disregard as to whether it is false or not.

2. LIBEL AND SLANDER — MALICE — PRIVILEGE TO PUBLISH — EVIDENCE.

Malice in a libel case must exist at the time of the original libelous publication to overcome a qualified privilege to publish, and evidence of writings or publications of a libel which a defendant made subsequent to the original libel is admissible to show the existence of malice at the time of the original publication.

3. APPEAL — PRESERVING QUESTION.

A claim of an error made during trial is preserved for appeal upon a defendant's failure to object to the alleged error during trial or to request a curative instruction only where manifest injustice results.

4. LIBEL AND SLANDER — PLEADINGS — PRIVILEGE.

Statements made in pleadings are privileged and cannot form the basis for a libel action.

5. LIBEL AND SLANDER — DAMAGES — NOTICE — RETRACTION OF LIBEL — STATUTES.

A plaintiff in an action based on libel or slander may recover only actual damages suffered in respect to his property, business, trade, profession, occupation, or feelings; exemplary and punitive damages may be recovered only where a plaintiff, prior to instituting an action, gives notice to the defendant to publish a retraction and allows a reasonable time therefor (MCL 600.2911[2]; MSA 27A.2911[2]).

6. LIBEL AND SLANDER — GOOD FAITH — RETRACTION OF LIBEL — MITIGATION OF DAMAGES — STATUTES.

Evidence of publication of a retraction or correction in a libel action is admissible to show a defendant's good faith and in mitigation and reduction of exemplary or punitive damages (MCL 600.2911[2][b]; MSA 27A.2911[2][b]).

7. LIBEL AND SLANDER — RETRACTION OF LIBEL — NATURE OF RETRACTIONS — GOOD FAITH — MITIGATION OF DAMAGES — STATUTES.

A retraction of a libel shall be published in the same size type, in the same editions, and, as far as practicable, in substantially the same position as the original libel to be considered on the question of the good faith of a defendant and in mitigation and

reduction of exemplary or punitive damages (MCL 600.2911[2][b]; MSA 27A.2911[2][b]).

8. DAMAGES — EXEMPLARY OR PUNITIVE DAMAGES.

Exemplary or punitive damages are recoverable in Michigan as compensation to a plaintiff and not as punishment of a defendant.

9. LIBEL AND SLANDER — DAMAGES — DAMAGE TO FEELINGS — STATUTES.

Actual damages which a plaintiff has suffered in respect to his feelings, such as mental anguish, denial of social pleasures, embarrassment, ridicule, humiliation, mortification, or fear are compensable in defamation cases (MCL 600.2911[2][a]; MSA 27A.2911[2][a]).

CONCURRENCE BY V. J. BRENNAN, P.J.

10. DAMAGES — PUNITIVE DAMAGES — JURY INSTRUCTIONS.

*Damages cannot be recovered in Michigan for the purpose of punishing a defendant; thus, the term "punitive damages" should not be used, especially in jury instructions, where it can lead to confusion and appellate review.*

*Balfour Peisner, in propria persona* and for plaintiff Nora S. Peisner.

*Brownson Murray,* for defendants.

Before: V. J. BRENNAN, P.J., and BRONSON and H. E. DEMING,* JJ.

H. E. DEMING, J. Plaintiff Balfour Peisner, a Detroit attorney, filed a complaint against defendants Detroit Free Press and Free Press reporter Louis Heldman on December 10, 1973, seeking damages for libel. His wife, Nora S. Peisner, joined in the complaint with a derivative claim. The basis for the action was an article written by Heldman which appeared in the Free Press on November 20, 1973. The article charged plaintiff Balfour Peisner with inadequate representation of an indi-

* Circuit judge, sitting on the Court of Appeals by assignment.

gent criminal defendant in appellate proceedings and with unethical conduct. Plaintiffs claimed that the libel was repeated in a December 1, 1973, Free Press editorial.

On January 11, 1974, defendants filed a counterclaim alleging abuse of process by plaintiffs. Plaintiffs filed a motion to dismiss the counterclaim which was denied by the trial court. Plaintiffs prevailed in an interlocutory appeal to this Court and the counterclaim was dismissed. *Peisner v Detroit Free Press, Inc,* 68 Mich App 360; 242 NW2d 775 (1976), *lv den* 399 Mich 825 (1977).

On June 14, 1977, defendants filed a motion for summary judgment claiming that the complaint failed to state a cause of action and that there was no genuine issue of fact because the matters reported in the article and editorial were true and their publication was privileged. The trial court granted the motion and plaintiffs appealed to this Court which reversed and remanded the case for trial. In its opinion, the panel stated that defendants had a qualified privilege to publish the article in question which could be overcome by a showing of actual malice and that summary judgment was improper because plaintiffs' pleadings raised an issue of fact as to the existence of malice. *Peisner v Detroit Free Press, Inc,* 82 Mich App 153; 266 NW2d 693 (1978).[1]

The case finally proceeded to trial, and, on September 15, 1978, the jury returned a verdict against defendants. Plaintiff Balfour Peisner was awarded $52,000 actual damages and $100,000 "additional" damages. His wife was awarded $5,-000 actual damages. Defendants were held jointly and severally liable for the actual damages while only defendant Free Press was held liable for the

---

[1] A detailed statement of facts is contained in this opinion.

additional damages. Defendants' post-trial motion for a new trial and/or remittitur was denied. Defendants now appeal as of right.

Defendants first argue that the trial court erred in refusing to instruct the jury that, in order to show malice, plaintiffs were required to establish that defendants acted with ill will and intended to injure plaintiff by means of a falsehood. We disagree. The jury was instructed that actual malice would be shown by proof that defendants wrote or published the article in question with knowledge that it was false or with reckless disregard for whether it was false or not. This instruction conforms to the definition of actual malice set forth by the United States Supreme Court in *New York Times v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964). While the type of definition advocated by defendants finds some support in Michigan law, see, *e.g., Powers v Vaughan,* 312 Mich 297; 20 NW2d 196 (1945), we believe that the disputed instruction was properly rejected because it would have eliminated the "reckless disregard" segment of the *New York Times* definition. The *New York Times* standard has been accepted by the Michigan Supreme Court. *Arber v Stahlin,* 382 Mich 300; 170 NW2d 45 (1969), *Wynn v Cole,* 91 Mich App 517; 284 NW2d 144 (1979).

Next, defendants claim that the trial court erred in allowing the jury to consider a letter in which plaintiffs demanded retraction of the charges and the December 1, 1973, editorial as evidence of malice. The malice must exist at the time of the original libelous publication, and the jury in the present case was so instructed. *New York Times, supra.* Statements or publications of a libel which a defendant has made subsequent to the one complained of have been held admissible as evidence

tending to show the existence of malice at the time of the original publication. *Thibault v Sessions,* 101 Mich 279; 59 NW 624 (1894), *Smith v Hubbell,* 142 Mich 637; 106 NW 547 (1906). We find that the retraction demand and editorial were relevant and admissible on the question as to whether the defendants acted with malice in publishing the original article.

Defendants also claim that the jury was improperly allowed to consider the editorial as actionable in itself. The trial judge, outside the presence of the jury, interpreted this Court's decision in *Peisner, supra,* 82 Mich App 153, as holding that the editorial could not itself be the basis of a cause of action. The jury, however, was never specifically instructed that the editorial was not actionable. The trial court's instructions did indicate that the only publication in question was the original article:

"Now, I charge you, Members of the jury, that in this case in publishing *this article in question on November 20th, 1973,* the Defendants enjoyed what we call a qualified privilege, since under the law the press does enjoy a qualified privilege which precludes recovery for a claimed libel which is based upon the reports of matters of public interests, unless the Plaintiff establishes that the Defendants published an untruth *[sic]* report with knowledge of its falsity or with a reckless disregard of the truth. Now, I hold and I am charging you, Members of the jury, that *the article* complained of in this case is defamatory." (Emphasis added.)

The judge read each side's theory of the case to the jury. Included in plaintiffs' theory was the claim that the editorial was libelous and caused injury to plaintiffs. Defendants now claim that the reading of this theory, coupled with the failure of the judge to instruct the jury that the editorial

was not actionable, resulted in a damage award based in part on the publication of the editorial. Defendants did not object to the reading of plaintiffs' theory and never requested an instruction that the editorial was not actionable. Under these circumstances, any error was preserved for appeal only if it resulted in manifest injustice. *Earle v Colonial Theater Co,* 82 Mich App 54; 266 NW2d 466 (1978), *lv den* 403 Mich 816 (1978). We do not believe manifest injustice occurred in the present case. The editorial did not repeat the specific allegations of professional misconduct contained in the article, although it called for a Bar Association review of plaintiff Balfour Peisner's conduct to determine if an ethical violation occurred. It is unlikely that the jury based its finding of liability on the editorial. Furthermore, the trial court had planned to give an instruction requested by plaintiffs which contained the statement that the editorial was not actionable. However, the proposed instruction was withdrawn following a defense objection to the failure of the instruction to state that the requisite malice had to exist at the time of the original publication.

During closing argument, plaintiffs' attorney read aloud a portion of defendants' pleadings in which the defense of truth was claimed. Defense counsel's objection was overruled and his request for a jury instruction that the pleadings could not be considered as evidence of malice was denied. In the post-trial motion, defendants argued that the pleadings were privileged and thus inadmissible. Defendants now argue that the pleadings were privileged and that the assertion of truth therein was improperly used as evidence of malice. Cases relied on by defendants include *Hartung v Shaw,* 130 Mich 177; 89 NW 701 (1902), and *Bennett v Attorney General,* 65 Mich App 203; 237 NW2d

250 (1975), which held that statements made in pleadings are privileged and cannot form the basis for a libel action. In *Sanders v Leeson Air Conditioning Corp,* 362 Mich 692; 108 NW2d 761 (1961), the Court held that statements made in pleadings, if relevant to the issues of a case, are absolutely privileged. Based on these cases, we hold that the trial judge erred by allowing plaintiffs' counsel to make the argument based on defendants' claim of truth and by failing to give the requested instruction. However, we find that this error was harmless under GCR 1963, 529.1 due to the evidence of malice which had been presented to the jury before the disputed argument was made. This included the publication of the editorial by defendant Free Press and its refusal to retract anything in the original article, although plaintiffs had demanded retraction in a letter which pointed out specific allegations in the article which plaintiffs claimed were false.

Defendants raise two issues concerning the propriety of the damage award. First, they argue that the trial court's instructions improperly authorized the jury to award multiple damages for the same injury to plaintiff Balfour Peisner's "feelings". The instructions were based in part on MCL 600.2911(2); MSA 27A.2911(2), which provides:

"(a) Except as provided in (b), in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he has suffered in respect to his property, business, trade, profession, occupation, or feelings.

"(b) Exemplary and punitive damages shall not be recovered in actions for libel unless the plaintiff, before instituting his action, gives notice to the defendant to publish a retraction and allows a reasonable time to do so, and proof of the publication or correction shall be

admissible in evidence under a denial on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages. The retraction shall be published in the same size type, in the same editions and as far as practicable, in substantially the same position as the original libel."

In Michigan, exemplary or punitive damages are recoverable as compensation to the plaintiff, not as punishment of the defendant. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419; 295 NW2d 50 (1980). The Supreme Court stated:

"Our review of the precedent indicates that those cases which permit recovery of exemplary damages as an element of damages involve tortious conduct on the part of the defendant. * * * An award of exemplary damages is considered proper if it compensates a plaintiff for the 'humiliation, sense of outrage, and indignity' resulting from injuries 'maliciously, willfully and wantonly' inflicted by the defendant. * * * The theory of these cases is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings." *Id.,* 419.

Part (b) of the statute quoted above does not alter the common law rules governing exemplary or punitive damages, it merely states when such damages can be awarded in libel actions.

The trial court in the present case gave the following instructions on exemplary or punitive damages:

"Now, Members of the jury, the Michigan statute which I have just quoted mentions punitive damages. Now, under our law—and I want to correct any possible misimpressions—under our law the purpose of these 'punitive damages' is not to punish the Defendant *[sic]* for their misdeeds. The purpose of these damages,

which I prefer to refer to as additional damages rather than punitive damages, is to compensate the plaintiffs for injuries suffered by them because of the Defendants' actions.

"I charge you, that although the focus is upon the Plaintiff's injuries, in measuring these additional and exemplary damages, the focus is on the Defendant's actions in determining if these additional damages should be awarded.

"It has long been the position of the Courts of Michigan that the sting of libel will be much greater when the Defendants have acted with either knowledge of the falsity of the material, or with a reckless disregard for the truth. Since the injury is greater because *[sic]* the Defendant's actions, the Plaintiffs are entitled to recover greater damages than the actual damages. And this is what this punitive damages, which I referred to as additional damages means.

\* \* \*

"If you also decide that the Plaintiff, Mr. Peisner, is entitled to what I have labeled additional damages bacause the publishers of the—I'm sorry. Because the publisher knew that the facts were false or because the article was published with a reckless disregard for the truth, then you may award additional damages to the Plaintiff Peisner, and these additional damages are allowed to compensate him because the sting of libel is much greater—it's made much greater when the Defendants have acted with knowledge of the falsity.

"You may estimate such additional damages in order to fairly compensate the Plaintiff for the purposes of such additional damages. As I said, although they're called punitive, it's not to punish the Defendants."

These instructions were basically correct; however, the jury was not informed of specific types of damages to consider in awarding the additional damages. The omission is significant in view of the following instructions given on actual damages:

"Now, if you decide that the Plaintiff husband is

entitled to damages, it is your duty to determine the amount of money which reasonably, fairly and adequately compensates him for each of the elements of damage which you decide has resulted from the publication.by the Defendant. You should include each of the following items of damage which you decide have been sustained by the Plaintiff to the present time, and they include:

"The actual damages which the Plaintiff has suffered in respect to his property or business, trade, occupation *or feelings, his mental anguish, his denial of social pleasures and enjoyment, his embarrassment, ridicule, humilation, mortification or fear.* You may also include any of those elements of damage which you determine that the Plaintiff is reasonably certain to sustain in the future.

"Now, which, if any, of those elements of damage has been proved is for you to decide. But you have to decide that based upon evidence and not upon speculation, not upon guess and not upon conjecture. The amount of money to be awarded for certain of these elements of damage—such as: mental anguish, denial of social pleasures, embarrassment, mortification and ridicule *and things like that*—the ·amount of money awarded for those elements can't be proved in a precise dollar amount. The law leaves both amounts to your sound judgment. But your verdict must be solely to compensate the Plaintiff for his damages and not to punish the Defendants." (Emphasis added.)

These instructions on actual damages, standing alone, were not improper. The types of injury emphasized in the quoted portion of the instructions are compensable as actual damages in defamation cases, *Long v Tribune Printing Co,* 107 Mich 207; 65 NW 108 (1895), *Pettengill v Booth Newspapers, Inc,* 88 Mich App 587; 278 NW2d 682 (1979), and may fall under the term "feelings" in part (a) of the libel-damages statute.

The error we perceive in the instant cases results from the combined effect of the instructions

on actual and exemplary damages. Compensation for the types of injury normally part of exemplary damages, including "humiliation, sense of outrage and indignity", was authorized by the instruction on actual damages. If the actual-damages instruction was correctly followed, the exemplary damages awarded were a form of punishment which is not permitted in this state.

Defendants also claim that the damages awarded were excessive and not supported by the evidence. The trial judge denied a defense motion for remittitur, although he acknowledged that the judgment was possibly the largest libel judgment in Michigan history. While we are of the opinion that the damage award was excessive, we do not base our reversal on that ground.

Plaintiff Balfour Peisner's claim that he is entitled to costs because the defendants failed to file a proper statement of facts is denied.

The jury's finding of liability is affirmed, but the damage award is set aside and the case remanded for a new trial on the issue of damages only.

No costs, neither side having prevailed in full.

BRONSON, J., concurs in the result only.

V. J. BRENNAN, P.J. *(concurring)*. I concur in the above opinion and only write separately to express my concern with the recurring confusion that arises over instructions on "punitive" and "exemplary" damages. While it often appears that the two terms are used interchangeably, there is a real, legal significance which goes beyond mere semantics. Legally, the focus of the two damages is different. Punitive damages are awarded solely to punish or to make an example of a defendant because of the malice or recklessness with which he acted. Exemplary damages are awarded for

injury to feelings and for the sense of indignity and humiliation suffered by a plaintiff because of injury maliciously and wantonly inflicted. In other words, "punitive" damages focus upon "punishing" a defendant and "exemplary" damages focus upon "compensating" a plaintiff. *American Central Corp v Stevens Van Lines,* 103 Mich App 507; 303 NW2d 234 (1980), *Wronski v Sun Oil Co,* 89 Mich App 11, 27; 279 NW2d 564 (1979), *lv den* 407 Mich 863 (1979), *Ray v Detroit,* 67 Mich App 702, 704; 242 NW2d 494 (1976), *lv den* 397 Mich 828 (1976).

As the Michigan Supreme Court most recently reaffirmed, only exemplary damages which are compensatory in nature are allowed. Damages cannot be recovered for the purpose of punishing a defendant. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419; 295 NW2d 50 (1980), *Ray, supra.*

Since Michigan does not permit punitive damages, the term should be eliminated from our legal parlance. Jury instructions, such as those given in the instant case, which use the term "punitive damages", while at the same time disclaiming that damages can be given to "punish" the defendant, will inevitably lead to jury confusion and invite appellate review.